# UNITED STATES DISTRICT COURT
# DISTRICT OF WASHINGTON D.C.

| | | |
|---|---|---|
| T & B HOLDING GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **AND INJUNCTIVE RELIEF** |
| MERRICK B. GARLAND, Attorney General | ) | |
| of the United States, ALEJANDRO | ) | |
| MAYORKAS, Secretary of U.S. Department of | ) | |
| Homeland Security, UR MENDOZA JADDOU, | ) | |
| Director of U.S. Citizenship and Immigration | ) | |
| Services, GREGORY A. RICHARDSON, | ) | |
| Director of USCIS Texas Service Center, | ) | |
| | ) | |
| Defendants. | ) | |

## I.  INTRODUCTION

Plaintiff, T&B Holding Group, LLC, through undersigned counsel, hereby files this Complaint for declaratory and injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, 5 U.S.C. §§ 551 et seq., 5 U.S.C. §§ 701 et seq. In support of its Complaint, Plaintiff states as follows:

## II.  JURISDICTION AND VENUE

1.  This Court has federal question jurisdiction in this case under 8 U.S.C. § 1329, 28 U.S.C. §§ 1331, 1361, 1367(a), 1346(b), and 2201; 5 U.S.C. §§ 501 et seq., 701 et seq, and 704.

2.  The Plaintiff may seek judicial review upon revoking of its visa petition without any further administrative appeal. The Plaintiff has exhausted its administrative remedies prior to filing this lawsuit.

3.  The Plaintiff has standing as it has suffered an injury in fact that is fairly traceable to the Defendants' violations of the Administrative Procedure Act ("APA") and Immigration and Nationality Act ("INA"), and that is likely to be redressed by a favorable decision in this matter. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

4.     The United States has waived sovereign immunity under 5 U.S.C. § 702.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e). Defendants Attorney Garland, Secretary Mayorkas, and Director Jaddou reside in Washington D.C.

### III.     PARTIES

6.     Plaintiff, T&B Holding Group, LLC ("T&B"), is a limited liability Florida Corporation and is headquartered in Orlando, Orange County, Florida. T&B Holding-USA is an affiliate of Indcom Industrias y Comercio, C.A. (hereinafter "Indcom-Venezuela" or "the Venezuelan affiliate"). Indcom-Venezuela is a Venezuelan corporation that was established on February 8, 2004.   T&B Holding-USA was formed as a diversified holding company. The Company buys shares in targeted companies; invests additional capital to increase the profitability and maximize the value of the acquired companies. In addition, T&B Holding-USA acts as a consultant to the companies in which it has invested (hereinafter "portfolio companies") by providing direct *oversight* and operational support.

7.     Defendant, Merrick B. Garland is the Attorney General of the United States and is sued in his official capacity. Attorney Garland's mailing address is U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

8.     Defendant Alejandro Mayorkas is the Secretary of the U.S. Department of Homeland Security and is sued in his official capacity. His mailing address is Office of the General Counsel, U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Ave, SE, Washington, DC 20528-0485.

9.     Defendant Ur Mendoza Jaddou is the Director of United States Citizenship and Immigration Services (hereinafter "USCIS") and is sued in her official capacity. Her mailing

address is USCIS, Office of the Chief Counsel, 5900 Capital Gateway Drive, Mail Stop 2120,

Camp Springs, MD 20588-0009.

10.     Defendant Gregory A. Richardson is the Director of the USCIS Texas Service

Center and is sued in his official capacity. His mailing address is 6046 N Belt Line Rd, Irving,

TX 75038.

## IV.     LEGAL BACKGROUND

11.     A U.S. employer may file a nonimmigrant petition (Form I-129) for a noncitizen

to be classified as an executive or manager under 8 U.S.C § 1101(a)(15)(L) (also known as the

L-1A visa). To grant an L-1 visa, 8 U.S.C § 1101(a)(15)(L) requires:

> subject to section 1184(c)(2) of this title, an alien who, within 3
> years preceding the time of his application for admission into
> the United States, has been employed continuously for one year by
> a firm or corporation or other legal entity or an affiliate or subsidiary
> thereof and who seeks to enter the United States temporarily in
> order to continue to render his services to the same employer or a
> subsidiary or affiliate thereof in a capacity that is managerial,
> executive, [omitted] and the alien spouse and minor children of any
> such alien if accompanying him or following to join him[.]

12.     Similarly, a U.S. employer may file an immigrant petition (Form I-140) for a

noncitizen to be classified as a multinational executive or manager under 8 U.S.C § 1153(b)(1)(c)

(also known as the EB-1 visa). This petition is the first step toward the noncitizen obtaining lawful

permanent residence (or the "green card") in the United States. To grant an EB-1(c) visa, 8 U.S.C

§ 1153(b)(1)(c) requires:

> An alien is described in this subparagraph if the alien, in the 3 years
> preceding the time of the alien's application for classification and
> admission into the United States under this subparagraph, has been
> employed for at least 1 year by a firm or corporation or other legal
> entity or an affiliate or subsidiary thereof and the alien seeks to enter
> the United States in order to continue to render services to the same

employer or to a subsidiary or affiliate thereof in a capacity that is
managerial or executive.

13.    The criteria for granting the nonimmigrant L1-A visa (executive or manager) and

the immigrant EB-1 visa are essentially the same.

14.    8 C.F.R. §1101 (a)(44)(B) and 8 C.F.R. § 204.5(j)(2)(c) define the term "**executive**

**capacity**" as:

> [B] an assignment within an organization in which the employee
> primarily-
>> (i) directs the management of the organization or a major
>> component or function of the organization;
>> (ii) establishes the goals and policies of the organization,
>> component, or function;
>> (iii) exercises wide latitude in discretionary decision-
>> making; and
>> (iv) receives only general supervision or direction from
>> higher level executives, the board of directors, or
>> stockholders of the organization.

## V.    FACTUAL ALLEGATIONS

15.    From 2004 until 2007, Mr. Vito Tuozzolo worked as a Director for INDCOM-

Venezuela. From 2007 until 2014, Mr. Vito Tuozzolo was named Director/Partner at INDCOM-

Venezuela conducting general management and operation planning of the company at all levels.

From 2014 to present, Mr. Vito Tuozzolo was named Director/Partner for Plaintiff at the Orlando,

Florida, Office.

16.    Mr. Vito Tuozzolo's business expertise in the years of 2013, 2014, 2015 helped

grow Plaintiff's brand Tax Care and helped in its development and sales promotion. He also served

and managed 12 new franchises. Through Mr. Vito Tuozzolo, Plaintiff was able to acquire interest

in  at least four (4) companies, namely (1) 100% of Motorsports Plus LLC /DBA GP Teamwear –

www.gpteamwear.com (2) 50% of Jach and Associates DBA La Merce Restaurant and Market-

www.lamerce.us. (3) 100% of Aries Design Handcraft LLC and (4) 25% of 407 Management INC.

**a.  I-129 Petition for Nonimmigrant Worker**

17.    On November 25, 2013, USCIS approved Plaintiff's first I-129 Petition to classify Mr. Vito Tuozzolo as an L1-A executive nonimmigrant worker, valid until December 1, 2014. *See Exhibit A.*

18.    On February 3, 2014, Mr. Vito Tuozzolo entered the United States on an L-1A nonimmigrant visa as an Executive manager/CEO for Plaintiff.

19.    On December 2, 2014, USCIS approved Plaintiff's I-129 Petition to renew and extend Mr. Vito Tuozzolo's status as an L1-A executive nonimmigrant worker, valid from December 2, 2014, until December 1, 2016. Thereafter, Mr. Vito Tuozzolo continued to be employed by Plaintiff as an Executive manager/CEO of the Orlando, Florida, Office. *Id.*

20.    On November 29, 2018, Plaintiff filed Form I-129, Petition for a Nonimmigrant Worker, for a third time for its employee, Mr. Vito Tuozzolo to renew his L1-A nonimmigrant status. Meanwhile, Mr. Vito Tuozzolo's Form I-485 remained pending at USCIS.

21.    On September 3, 2019, USCIS issued a Request for Evidence to Plaintiff for the Form I-129, requesting additional evidence from Plaintiff to show that:

- The U.S. company is doing business in the U.S. and in a qualifying company abroad;
- The beneficiary will be employed in a managerial or executive position in the U.S., has prior education, training, and employment that qualifies him to perform the intended services in the U.S., and has at least one year of continuous full-time employment with a qualifying organization (within 3 years before application for admission to the U.S. in a position that was managerial, executive, or involved specialized knowledge).

22.    On November 25, 2019, Plaintiff timely responded to USCIS with the requested evidence. The supporting evidence submitted to the USCIS included qualifying relationship between the companies, executive's overseas employment, plaintiff conducting business in the

U.S. for at least one (1) year, subcompanies information, beneficiary doing business in the U.S. for at least one (1) year, Plaintiff's ability to pay the beneficiary and so forth**.** *Exhibit B.*

23.　　On March 11, 2020, USCIS issued a denial of Plaintiff's Form I-129, reasoning that (1) Plaintiff did not sufficiently demonstrate that Mr. Vito Tuozzolo has been employed abroad in a position that was managerial, executive, or involved specialized knowledge; and (2) Plaintiff has not established that Mr. Vito Tuozzolo would be employed in a primarily managerial or executive capacity in the United States. *Exhibit C.*

24.　　On April 13, 2020, Plaintiff timely appealed the denial of Form I-129, arguing that USCIS failed to properly adjudicate the petition based on the law and submitted evidence and that the decision was arbitrary and capricious. *Exhibit D.*

25.　　On November 27, 2020, the USCIS Administrative Appeals Office (hereinafter "AAO") denied the appeal, holding that Plaintiff abandoned its claims and the petition could not be approved. The AAO reasoned that Plaintiff did not adequately address the Service's Request for Evidence and that Plaintiff did not show that the decision was arbitrary and capricious. Specifically, the AAO reasoned that Plaintiff did not address the beneficiary executive employment abroad. *Exhibit E.*

### b.  I-140, Immigrant Petition for Alien Worker

26.　　On May 25, 2016, Plaintiff, T&B Holding Group, LLC, filed an I-140 petition seeking to classify its employee, Mr. Vito Tuozzolo, who was in L1-A nonimmigrant status as an "multinational executive manager" for purposes of an EB-1 immigrant visa petition (leading to lawful permanent resident status, or the "green card").

27.     On May 15, 2017, Defendant Director Richardson approved the I-140 Petition, classifying Mr. Vito Tuozzolo as an EB-1 beneficiary, eligible to apply for adjustment of status (or the "green card"). *Exhibit F.*

28.     On July 5, 2017, Mr. Vito Tuozzolo filed Form I-485, Application for Adjustment of Status based on the approved I-140 petition for EB-1 classification to obtain lawful permanent residence (or the "green card").

29.     On March 26, 2019, USCIS issued a Notice of Intent to Revoke (hereafter "NOIR") the approved I-140. *Exhibit G.* The NOIR stated that Plaintiff did not previously show the beneficiary acted in primarily an executive or managerial capacity and that Plaintiff had "misrepresented material facts concerning [Mr. Vito Tuozzolo's] employment history, number of company employees and company revenue data and committed fraud." USCIS cited to certain evidence indicating that the employment history was inconsistent, and a material misrepresentation has been made to USCIS. The specific evidence USCIS cited to included the (1) Employment Verification Letter, (2) G-325A, and (3) Resume.  USCIS also relied upon the information derived from the Florida Department of State in stating the Petitioner had no employees. Furthermore, USCIS then concluded that T&B Holding Group LLC was not in operation because no wages were paid. The Florida Department of State showed no wages were paid in the quarters ending in 03/14/2017 and 06/30/2017. The USCIS Officer claimed that Plaintiff misled USCIS and therefore committed fraud.

30.     On April 26, 2019, Plaintiff responded to the NOIR. *See Exhibit H.*  In addition to the initial supporting evidence, as noted above, supplementary evidence was submitted at the request of USCIS, including Plaintiff company's organizational report, charts indication of owners,

employees, subcontractors, 1099 forms for to 2017 employees and subcontractors, resumes, letter of employment, and the G-325.

31.     On July 30, 2019, USCIS issued a Notice of Revocation (NOR) for Plaintiff's previously approved I-140, <u>revoking</u> Mr. Vito Tuozzolo's classification as an executive immigrant worker. *Exhibit I.* The revocation alleged that Plaintiff submitted inconsistent and inaccurate information concerning its employees, and business and that the employees were paid by other entities, among other things, as the basis of its revocation.(Thereafter, on September 11, 2019, USCIS denied Mr. Vito Tuozzolo's I-485 Application for Adjustment of Status based on the revocation of his underlying qualifying status to adjust.)

32.     On August 23, 2019, Plaintiff timely appealed the I-140 revocation, arguing that (a) the revocation was erroneous as to conclusion of facts, (b) the officer erred as a matter of law in determining that Plaintiff committed fraud, and (c) that there was not good and sufficient cause to revoke the petition. *Exhibit J.*

33.     On November 25, 2020, the AAO issued a decision, concluding that the USCIS correctly revoked the petition as the evidence reflected that it was approved in error. *Exhibit K.* The AAO reasoned that Plaintiff did not sufficiently show that the beneficiary was engaged in executive-level duties and additionally, relied on low staffing levels to support its conclusion. However, the AAO specifically withdrew the finding of willful misrepresentation by USCIS due to insufficient evidence to support such a finding.

## VI.    <u>ARGUMENT</u>

34.     This Court is called upon to determine: whether the Plaintiff has, in fact, submitted evidence satisfying that the beneficiary was acting in executive capacity in the United States establishing " multinational managers and executives " listed in *8 C.F.R. § 204.5(J)*; whether the

USCIS's finding to the contrary was arbitrary, capricious and contrary to law; whether the USCIS erred and improperly re-adjudicated the Plaintiff's I-140 petition which was approved by the USCIS based on similar evidence which subjected the Plaintiff to a higher standard of proof than the "preponderance of the evidence standard" mandated by law; whether the USCIS's policy of "re-adjudicating an already approved petition" is *ultra vires* and thus impermissible pursuant to the APA and whether the USCIS has violated the APA and the INA in its manner of adoption of the re-adjudication based on *Matter of Ho, 19 I & N Dec. 582 (BIA 1988).*

35.     The Court should vacate the agency's decision if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review dictates that the Court should merely "examine the administrative record to ensure that the agency's decision 'was based on a consideration of relevant factors' and that the decision was not 'a clear error.'" *Transkei,* 923 F.2d at 177 (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

## A. THE DEFENDANT ERRED AS A MATTER OF LAW AS THE DEFENDANT SHOULD HAVE NEVER RE-ADJUDICATED THE ALREADY APPROVED I-140 PETITION UNDER *MATTER OF ARIAS* AND SECTION 205 OF THE INA.

36.     Section 205 of the INA states that the Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under Section 204 of the INA.  Such revocation shall be effective as of the date of approval of any such petition.  The realization that an immigrant visa petition was approved in error constitutes good and sufficient cause for revoking its approval. A notice of intent to revoke the petition is properly issued for "good and sufficient cause" when the evidence of record at the time of issuance, if unexplained or unrebutted, would warrant a denial of the visa petition based

upon petitioner's failure to meet his burden of proof. *See Matter of Ho, 19 I&N Dec. 582(BIA 1998) and Matter of Estime, 19 I&N Dec. 450 (BIA 1987)*. The revocation can only be grounded upon, and the petitioner is only obliged to respond to, the allegations in the Notice of Intent to Revoke (NOIR). *Matter of Arias, 19 I&N Dec. 568 (BIA 1988).*

37.     The USCIS did not have sufficient legal grounds to revoke the I-140 approval when it relied on new allegations that Plaintiff misrepresented its employees and paid wages (Citing the Florida Department of State records). Plaintiff sufficiently rebutted these allegations of misrepresentation in response to the NOIR by providing records showing the company's employees and wages paid during the relevant periods of time. Therefore, the USCIS did not have good and sufficient cause to issue the revocation under Section 205 of the INA. Moreover, the AAO later stated in the decision dated November 25, 2020, that "the Director's finding of willful misrepresentation was not supported by sufficient analysis of the critical factors listed above and *we do not agree that the noted discrepancies amount to willful misrepresentation of material facts*." If willful misrepresentation was not supported by the AAO, which was the only basis for the NOIR, then the original approval should have been reinstated due to USCIS failing to establish the good and sufficient cause requirement under 205 of the INA.

38.     The AAO also erred as a matter of law in relying on reasons not set forth in the NOIR to affirm its revocation in the November 27, 2020, decision. The USCIS denied Plaintiff's appeal on the basis that the submitted evidence did not support the finding that the Petitioner had sufficient staffing to support the beneficiary in an executive capacity, which was not a reason cited in the initial revocation decision. The service erred in its conclusion as it referenced discrepancies from the number of employees. The USCIS erroneously mixed the number of employees at the original time of filing, with the number of employees at the time of the appeal.

39.     Even if staffing levels were cited in the original revocation decision, the USCIS erred in relying on staffing levels in the November 27, 2020, decision as a matter of law, which is <u>one</u> factor, and not determinative of whether and an individual acted in executive capacity. The mere fact that an individual manages low or a fewer number of employees/staffs, does not mean he or she is <u>*not*</u> acting in executive capacity. USCIS did not properly consider the reasonable need of the organization when determining the staffing levels. Additionally, the USCIS cited erroneous numbers of employees in the decision to support its conclusion.

40.     If the Petitioner establishes that the offered position meets all the elements set forth in the statutory definition, the Petitioner must prove that the Beneficiary was primarily engaged in executive duties, as opposed to ordinary operational activities alongside the Petitioner's other employees. *Family Inc. v. USCIS*, 469 F.3d 1313, 1316 (9th Cir. 2006). Unlike the Petitioner in *Family Inc*., where the Petitioning company was small, and where the beneficiary was the President, his wife manager, had only 4 employees and only one shareholder in Korea, here the Petitioning company has more than one shareholder, had numerous employees under different job titles and the owner numerous shares in subcompanies, the Plaintiff submitted abundant evidence in the form of invoices, tax returns, organizational chart, and job descriptions to support the I-140 petition. The Petitioning company also grew under the leadership and planning of the beneficiary which proves that the company was substantial. Therefore, the Defendant's reliance on *Family Inc*. Is not relevant for the facts in this matter.

41.     As stated above in the *Matter of Arias*, the Plaintiff was only obliged to respond to the queries based in the NOIR, which the Plaintiff clearly fulfilled. Each adjudicative element to establish the eligibility of the Beneficiary was responded to. The responses were also sent with sufficient and corroborative evidence, with corresponding explanations. Every single query of the

NOIR was explained and re-butted by the Plaintiff. However, USCIS revoked the Plaintiff's approved I-140 on July 30, 2019, in their Notice of Revocation (NOR). It should also be noted by the Court that the reasoning in the NOIR and NOR are very similar as if it is a boilerplate formatted response. The Defendant erred and failed to explain why the response to NOIR was not sufficient and did not meet the burden of proof.

42.     The Plaintiff was not provided a fair chance to address new queries and therefore the Defendant erred as a matter of law in re-adjudicating the Plaintiff's petition due to the Defendant's subjective reasoning. The USCIS re-adjudicated the Plaintiff's I-140 petition based on further new queries related to duties, staffing and executive capacity, which were never raised before the revocation as required by *Matter of Arias*.. It seems that the Defendant looked for any and whatsoever reasoning that he can find to revoke the Plaintiff's petition on different queries at least three (3) times in the form of RFE, NOIR, NOR and the final decision.

**B. THE DEFENDANT'S DENIAL OF PLAINTIFF'S I-129 PETITION WAS ARBITRARY, CAPRICIOUS AND AN ABUSE OF DISCRETION BECAUSE THE PETITION MET THE SAME LEGAL STANDARDS OF THE PREVIOUSLY APPROVED PETITIONS UNDER 8 U.S.C § 1101(A)(15)(L).**

43.     Defendant's arbitrary and capricious adjudication is depriving Plaintiff of the Beneficiary's services as a U.S. worker and permanent employee, forcing Plaintiff to submit one-year annual extensions of Mr. Tuozzolo's L-1A nonimmigrant status, pay exorbitant fees to Defendant; and suffer unpredictable extension adjudications that are disruptive to Plaintiff's business operations. These injuries are directly caused by Defendant's arbitrary and capricious conduct. Plaintiff's injuries can be redressed by an order of this Court finding Defendant's actions unlawful.

44.     The Defendant erred denying Plaintiff's I-129 Petition without sufficient explanation when it previously approved the same petition under similar or same circumstances and approved the I-140 petition, which essentially had the same requirements. An agency may not make simultaneously inconsistent decisions without providing some explanation for the inconsistency. *Masonry Masters, Inc. v. Thornburgh,* 742 F. Supp. 682, 687 (D.D.C. 1990*)*. Furthermore, it has been held that the decision by the INS to deny an alien an immigrant visa was an abuse of discretion where the alien's L-1 visa was granted and extended on precisely the same standard that [USCIS] chose to deny immigrant visa classification and [USCIS] did not specifically elucidate why the previous grants and extensions of L1 visa were erroneous.*Omni Packaging Inv. Vs. United States Immigration and Naturalization Service, 733 F . Supp. 500 (D. Puerto Rico, 1990).* It has been held by the  court that this decision would impermissibly shift the burden to establish eligibility for a visa from the petitioner to the agency, *Mahalaxmi  Amba Jewelers v. Johnson*, 652 Fed. Appx. 612 (10th Cir. 2016).

45.     Around the same time of the denial of the latest I-129 petition, USCIS approved Plaintiff's I-140 Petition, classifying the beneficiary in EB-1C status under the same legal requirements needed to approve the I-129 petition (although this status was later revoked). Therefore, the I-140 approval in this case should be taken into consideration.

46.     The USCIS erred in failing to give deference to the three prior approvals of Plaintiff's I-129 Petition for Mr. Vito Tuozzolo where there was no material error, material change, or new material facts. According to the USCIS Policy Guidance issued on April 27, 2021, USCIS instructed officers to give deference to prior determinations when adjudicating extension requests involving the same parties and facts unless there was a material error, material change, or new material facts. *USCIS PA-2021-05*. In this case, there was no material errors, changes, or facts in

beneficiary's eligibility for L1-A status and Plaintiff sufficiently updated documentation to support beneficiary's eligibility. USCIS granted three (3) prior extensions on the same facts and therefore USCIS erred by not giving deference to his case.

47. Plaintiff submitted its petition with abundant documentary evidence of business bank statements, employee payrolls, tax returns, article of incorporations, employee earnings, which it had not previously submitted in support of its prior L-1A nonimmigrant visa petitions. Further in response to the RFE, Plaintiff submitted evidence to establish that the beneficiary will possess a qualifying assignment in the company along with W-2 forms for all of Plaintiff's employees in the years of 2014, 2015, and 2016. Evidence that demonstrated the Petitioners ability to pay the proffered wage such as tax returns, payrolls, newly acquired acquisitions were also submitted as evidence, along with explanation regarding the qualifying assignment of the beneficiary in the Plaintiff's company. Nevertheless, after submission of this abundant evidence, USCIS denied the Plaintiff's petition, stating that Plaintiff had failed to submit evidence satisfying that the beneficiary was employed in an executive capacity under the regulations. *(emphasis added)*.

48. On one hand, Defendant found the Plaintiff to be employed in " executive capacity" under the evidentiary criteria for three (3) separate multinational executive capacity nonimmigrant visa adjudications on three (3) different occasions by three (3) different adjudicators; and on the other, Defendant found that the Plaintiff met the executive capacity evidentiary criteria for the multinational executive capacity immigrant visa adjudication, approved the I-140 after the Plaintiff submitted evidence via RFE but then revoked the approved petition despite the identical nature of the specific criteria and categories of evidence submitted.

49.      In issuing its arbitrary, capricious, and indefensible denial decision, Defendant completely discounted the voluminous evidence submitted in support of the Plaintiff's multiple, approved petitions for L-1A nonimmigrant visa status on behalf of Mr. Tuozzolo as well as approved I-140 petition. Upon the Defendant's challenge to the evidence submitted as insufficient, in response to the Request for Evidence, Plaintiff submitted additional evidence of newly acquired interest, organizational charts and employee profiles referenced evidencing the Beneficiary's executive capacity.

### C. IN THE ALTERNATIVE, THE CASE SHOULD BE REMANDED TO THE ADMINISTRATIVE APPEALS OFFICE TO REINSTATE MR. TUOZZOLO'S ALREADY APPROVED I-140 PETITON.

50.      Plaintiff clearly showed based on the submitted evidence to USCIS that it employed Mr. Vito Tuozzolo in an executive capacity in the United States, and thus it was unreasonable and an abuse of discretion for Defendant to revoke the I-140 petition for an EB-1C immigrant visa. However, if this Court determines that further evidence is needed to determine that Mr. Tuozzolo worked in an executive capacity, then the Court should remand this case to the Administrative Appeals Office for a new determination.

51.      Neither the Administrative Appeals Office nor the District Director have correctly evaluated Mr. Tuozzolo's application by considering the abundant evidence submitted along with his petition, and numerous approvals.

52.      The I-140 petition was scrutinized at least two times in the form of an additional request for evidence, before it was approved. The Defendant had ample time and opportunity to deny the I-140 petition that the Plaintiff filed on behalf of the beneficiary. The Defendant also requested additional evidence to determine whether Plaintiff satisfied the executive capacity criteria.  The Plaintiff should not be penalized for the Defendant's error and incompetency in

determining and ultimately revoking the petition. Furthermore, the Defendant also had an opportunity to question or request additional information from the Plaintiff during the Beneficiary's Adjustment of Status interview which took place on May 1, 2018. *See Exhibit* The Defendant officer did not ask the Beneficiary any questions related to the business or his executive capacity. The Defendant's final decision to revoke the petition almost one year after the interview, without doing any due diligence is therefore abuse of discretion, arbitrary and capricious.

53.    Defendants also failed to give deference to the <u>three</u> prior I-129 approvals, classifying the beneficiary in nonimmigrant L1-A status as a multinational executive, which requires nearly identical criteria as the EB-1C visa petition.

## VII.    <u>STATEMENT OF CLAIM</u>

### A.    <u>Administrative Procedure Act</u>

54.    Federal agencies must comply with the Administrative Procedure Act when crafting and enforcing regulations and legislative rules. 5 U.S.C. § 553.

55.    In reviewing Federal agency rules and actions, courts first determine if the agency had statutory authorization to create rules that carry the force and effect of law. *United States v. Mead Corp.*, 533 U.S. 218, 226-227 (2001).

56.    The APA defines "rule" broadly as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4) (2006). Agency rules fall into four categories: interpretive; general statements of policy; agency organization and internal procedure; and, legislative. *See* 5 U.S.C. § 553, *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014).

57.    Agency rules are legislative if "the agency action binds private parties or the agency itself with the 'force of law,'' *GE v. EPA*, 290 F.3d 377, 382 (D.C. Cir. 2002) (internal quotation

marks omitted), and "an agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding ... or is applied by the agency in a way that indicates it is binding.' *Id*. At 383.

58.    A legislative rule "does more than simply clarify or explain a regulatory term, or confirm a regulatory requirement, or maintain a consistent agency policy. A rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or ***otherwise effects a substantive change in existing law or policy***. *Mendoza v. Perez*, 754 F.3d at 2021 (emphasis added).

59.    Courts have authority to review and invalidate final agency actions that are not in accordance with the law, lack substantial evidence, or are arbitrary and capricious. 5 U.S.C. § 706.

60.    Federal case law interpreting the APA has long distinguished between rulemaking and adjudication and has established rules for reviewing the legality of each type of action. In adjudication, an agency applies an existing standard to the facts of a specific case. *Londoner v. Denver*, 210 U.S. 373, 385 (1908). In contrast, rulemaking sets a prospective standard to be applied to a broad group of regulated persons. *See Bi-Metallic Investment Co. v. State Board of Equalization*, 239 U.S. 441, 446 (1915).

61.    The Supreme Court has held that an agency may not bypass the rulemaking process and use standards announced in adjudications to prospectively bind other parties. *NLRB v. Wyman-Gordon*, 394 U.S. 759, 765-66 (1969); *see also Morton v. Ruiz*, 415 U.S. 199 (1974). The clear lesson of these two cases is that an agency may not avoid rulemaking by making policy through adjudication. *See Yesler Terrace Community Council v. Cisneros*, 37 F.3d 442 (9th Cir. 1994).

62.    Agencies can earn judicial deference to properly authorized and properly promulgated legislative rules if the statute is ambiguous and the rule is reasonable. Where the

statute is not ambiguous, Courts and agencies must respect the rule. *Chevron v. NRDC*, 467 U.S. 837, 842-43 (1986).

63.    Only when courts establish that the statute is silent on an issue will they analyze an agency rule for deference under Chevron Step Two. *City of Arlington v. Fed. Commc'n Comm'n*, 569 U.S. 290, 296 (2013) (citing *Chevron*, 467 U.S. at 842-43).

64.    Agencies are not afforded deference when they do not explain the statutory basis or rationale for rules and regulations. *Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117, 2126 (2016). ("When an agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law').

65.    Absent new statutory authority Courts will not grant deference to an agency rule that undertakes a major regulatory action or change. *See United States Telecom Ass'n v. FCC*, 855 F. 3d 381, 420 (D.C. Cir. 2017) (describing major rules requiring statutory authorization including those that have large compliance costs).

### B.    Petition Fees.

66.    Congress required that petitioners for nonimmigrant visas pay fees that cover the cost of examination, adjudication and contribute to other  programs. 8 U.S.C. § 1351. Fees collected in excess of the costs of individual cases may be retained by Defendants to cover its total operational expenses. 8 U.S.C. § 1356(m).

67.    Plaintiff paid fees exorbitant fees in extending the Beneficiary's L1-A status, appealing the revocation of the EB-1C (I-140) approval, and appealing the denial of the L1-A (I-129) petition. *Exhibit L.* Additionally, the Beneficiary, Mr. Tuozzolo relying on the approved I-140 petition by the Defendants, filed an I-485 Adjustment of status petition for him and his spouse and child. *Id.* In sum, Plaintiff and Beneficiary incurred the following charges:

| | |
|---|---|
| I-129, Petitioner for Nonimmigrant Worker | $460.00 |
| I-290B, Notice of Appeal (for I-129 Denial) | $675.00 |
| I-140, Immigrant Petition for Alien Worker | $580.00 |
| I-290B, Notice of Motion to Reopen (Revocation of I-140) | $675.00 |
| I-485 (x3), Application for Adjustment of Status (based on I-140) | $3675.00 |
| Total: | $3,675.00 |

## COUNT I – Violation by Defendants of 5 U.S.C. § 706(2)(A)

68.     Plaintiff incorporates by reference all preceding paragraphs set forth herein.

69.     The applicable standard of review under the APA with respect to factual findings and application of the law to the facts depends upon whether agency action is taken after a formal hearing on the record. *See* 5 U.S.C. § 706(2)(E).  Since USCIS' denial of an employment-based petition does not involve a formal hearing, the standard of review is whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

70.     Under the "arbitrary and capricious" standard, the court reviews whether an agency "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation omitted). *See also Residential Finance Corp. v. USCIS*, 839 F. Supp. 2d 985, 996-97 (S.D. Ohio 2012) (USCIS made "inexplicable errors" constituting a "litany of incompetence that presents fundamental misreading of the record, misreading of the record, relevant sources, and the point of the entire petition" and thus failed to articulate "an untainted, satisfactory explanation for the denial that rationally connected the facts to the decision").

71.     An agency's decision is not arbitrary or capricious and must be upheld unless the record reflects "the agency has relied on factors which Congress has not intended it to consider,

entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Sandahl Farms v. Farm Serv. Agency of the USDA*, 2018 U.S. Dist. LEXIS 230803 at 29-30 (August 21, 2018) (*quoting McClung v. Paul*, 788 F.3d 822, 828 (8th Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. at 43)).

72.     If the agency has "considered the relevant factors and articulated a rational connection between the facts found and the choice made," its decision must be upheld. *See Sandahl Farms*, 2018 U.S. Dist. LEXIS 230803 at 30 (*quoting Baltimore Gas & Elec. Co. v. Natural Resources Defense Council*, 462 U.S. 87, 105, 103 S. Ct. 2246, 76 L. Ed. 2d 437 (1983)).

73.     Further, facts found by the agency need only be supported by "substantial evidence" in the record in order to meet the APA's standard. 5 U.S.C. § 706(2)(E). "The phrase 'substantial evidence' does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Sandahl Farms*, 2018 U.S. Dist. LEXIS 230803 at 30 (*quoting Pierce v. Underwood*, 487 U.S. 552, 564-65, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

74.     The standard of review for substantial evidence "is a narrow one and the court is not permitted to substitute its judgment for that of the agency." *Id.* (*quoting Dawson Farms v. Risk Mgmt. Agency*, 698 F.3d 1079, 1083 (8th Cir. 2012) (*quoting United States v. Massey*, 380 F.3d 437, 440 (8th Cir. 2004)).

75.     Defendants' revocation of Petitioner's I-140, Immigrant Petition for Alien Worker to classify Mr. Tuozzolo as a "multinational executive or manager" for immigrant visa purposes

based upon its factual finding that Plaintiff has failed to submit sufficient evidence to show that Mr. Tuozzolo is acting in an executive or managerial capacity is arbitrary, capricious and contrary to law, particularly given that it must have found sufficient evidence of the nearly identical requirements in approving Mr. Tuozzolo's prior L-1A nonimmigrant visa classification on three (3) prior occasions.

76.     Defendants' denial of Petitioner's I-129, Nonimmigrant Petition for Alien Worker to classify Mr. Tuozzolo as a "multinational executive or manager" for nonimmigrant visa purposes based upon its factual finding that Plaintiff has failed to submit sufficient evidence to show that Mr. Tuozzolo is acting in an executive or managerial capacity is arbitrary, capricious and contrary to law, particularly given that it must have found sufficient evidence in approving Mr. Tuozzolo's prior L-1A nonimmigrant visa classification on three (3) prior occasions.

77.     Further, Defendants' factual findings and decision are not supported by "substantial evidence." *See* 5 U.S.C. § 706(2)(E); *see also Family Inc. v. USCIS*, 469 F.3d 1313, 1315-16 (9th Cir. 2006) (USCIS's finding that the beneficiary was not engaged in primarily managerial duties, and thus not eligible for a multinational manager classification, "is supported by substantial evidence").

## COUNT II – Violation by Defendants of 5 U.S.C. § 706

78.     Plaintiff incorporates all preceding paragraph by reference set forth herein.

79.     The federal courts exercise *de novo* review under the APA over purely legal issues. *See Qwest Corp. v. Minn. PUC,* 427 F.3d 1061, 1064 (8th Cir. 2005). Courts have authority to review and invalidate final agency actions that are not in accordance with the law, lack substantial evidence, or are arbitrary and capricious. 5 U.S.C. § 706.

80. In visa petition proceedings, the burden is on the petitioner to establish eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). The standard of proof in most administrative immigration proceedings, and the one that is applicable in this case, is a "preponderance of the evidence." *See Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010).

81. The "preponderance of the evidence" requires a petitioner or applicant to show that it is "more likely than not" a claim is true based on "relevant, probative and credible evidence." *Matter of Chawathe*, 25 I&N Dec. at 376.

82. In other words, the preponderance of the evidence standard means that the petitioner must submit evidence that demonstrates his claim is "probably true." The petitioner satisfies the standard of proof if the evidence leads the adjudicator to believe that the claim is "more likely than not" or "probably" (i.e., a greater than 50% likelihood) true (even though there might be some minor doubts). *See U.S. v. Fonseca-Cardozo 480 U.S. 421(1987)*; *see also*, *USCIS Adjudicator's Field Manual*, Ch. 11.1(c).

83. The Defendant's obligation was to review the quality of the evidence to "*examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true*." Defendant's own precedent requires that "[i]f the adjudicator can raise a material doubt, then the adjudicator **must provide** an explanation of **why the adjudicator believes the claim is probably not true**." *See Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010) (emphasis added).

84. Defendant erred as a matter of law in holding the Plaintiff petitioner to a far higher standard of proof than a preponderance of the evidence in the immigrant visa petition denial. As a result, this Court may review this issue *de novo*.

85.    Defendant further erred as a matter of law and fact in failing to explain in its decision why the adjudicator believed the claims were probably not true in violation of its own precedent and the *Accardi* doctrine (the doctrine which requires that an agency be barred from taking action inconsistent with its internal regulations when doing so would affect individuals rights). *See United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 74 S. Ct. 499, 98 L. Ed. 681 (1954); *see also United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001). The Court may review this issue *de novo* as well.

## VIII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that this Court:

A.    Declare that Defendants acted arbitrarily and capriciously in deny the I-129 petition to classify Mr. Tuozzolo as a "multinational executive or manager" for the purposes of a nonimmigrant visa as invalid as a matter of law;

B.    Declare that Defendants acted arbitrarily and capriciously in revoking Plaintiff's I-140 petition to classify Mr. Tuozzolo as a "multinational executive or manager" for the purposes of an immigrant visa and the revocation is invalid as a matter of law;

C.    Remand this matter to USCIS to reopen and readjudicate Plaintiff's previously denied I-1-129 nonimmigrant visa petition;

D.    Remand this matter to USCIS to reinstate Plaintiff's previously approved I-140 immigrant visa petition;

E.    Remand this matter to USCIS to reopen and adjudicate the beneficiary's I-485 Adjustment of Status I-485 under the applicable standard of proof based on the remanded and approved I-140 petition;

F.    Grant attorneys' fees and costs pursuant 28 U.S.C. § 2412, 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d) and other authority; and

G.    Grant any other relief the Court deems appropriate and just.


Dated:        January 14, 2022                Respectfully submitted,

                                <u>*s/ Nayef Mubarak*</u>
                                Mubarak Law

250 N. Orange Avenue, Suite 950 Suite
Orlando, FL 32801
Phone: (407) 502-3000
Fax: (407) 650-3308

*Attorney for Plaintiff*